## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONTE RAY KNIGHT,                    *

Plaintiff,                          *

v.                                  *        Civil Action No. ELH-21-56

DIRECTOR GAIL WATTS, *et al.*,       *

Defendants.                         *
                                    ***

## <u>MEMORANDUM OPINION</u>

The self-represented plaintiff, Donte Ray Knight, filed suit pursuant to 42 U.S.C. § 1983 against Gail Watts, Director of the Baltimore County Detention Center ("BCDC"), and Yolanda Rawlerson, R.N. (collectively, the "County Defendants"), as well as PrimeCare Medical, Inc. ("PrimeCare"); Zowie Barnes, M.D.;[1] and Edna Boffie, CRNP (collectively, the "Medical Defendants"). ECF 1. Knight's Complaint, which is supported by exhibits and affidavits from four other inmates, is rooted in his detention at BCDC. He alleges that the County Defendants were deliberately indifferent to his needs, subjected him to cruel and unusual punishment by failing to comply with the guidance of the Centers for Disease Control and Prevention ("CDC") regarding the COVID-19 pandemic, and violated his rights pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). *Id.* at 4-6. In addition, Knight alleges that the Medical Defendants were negligent and "careless" in prescribing medication for him without disclosing possible side effects or adverse reactions. *Id.* at 2. He seeks five million dollars in damages. *Id.* at 7.

---

[1] The Clerk shall amend the docket to reflect the correct name of Dr. Zowie Barnes.

The County Defendants moved to dismiss or, in the alternative, for summary judgment. ECF 17.  Their motion is supported by a memorandum of law (ECF 17-1) (collectively, the "County Defendants' Motion") and numerous exhibits, including affidavits.  The Medical Defendants have also moved to dismiss or, in the alternative, for summary judgment.  ECF 23. Their motion is supported by a memorandum (ECF 23-1) (collectively, the "Medical Defendants' Motion"), an exhibit containing Knight's medical records, and an affidavit.[2]  Knight opposes both

---

[2] The Medical Defendants moved to seal their entire submission, asserting it was all sensitive and redaction would be difficult.  ECF 22.  I approved that request.  ECF 25.

The common law presumes that the public and the press have a qualified right to inspect all judicial records and documents.  *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citations omitted); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open."). Of course, the common law right of access can be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access."  *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *accord Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009).

The common law right of access is buttressed by a "more rigorous" right of access provided by the First Amendment, which applies to a more narrow class of documents, but is more demanding of public disclosure.  *Rushford*, 846 F.2d at 253.  If a court record is subject to the First Amendment right of public access, the record may be sealed "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest."  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).  In *Doe*, the Court said, 749 F.3d at 266 (quoting *Stone*, 855 F.2d at 181):  "When presented with a sealing request, our right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'"

Now that I have had an opportunity to review ECF 23 more thoroughly, it is clear that sealing of the entire submission is unwarranted. Plaintiff has himself made reference to medical matters, and they are not embarrassing in nature.  Therefore, I will direct the Clerk to lift the seal with respect to ECF 23, ECF 23-1, and ECF 23-3.  However, I shall retain the seal as to plaintiff's medical records (ECF 23-2), which are more personal.

motions.  ECF 27 (Opposition to County Defendants' Motion); ECF 33 (Opposition to Medical Defendants' Motion). [3]

The matter is now ripe for disposition.  Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2021).  The defendants' motions, construed as motions for summary judgment, shall be granted.

## I.      Factual Background

The claims raised by Knight center on two incidents.  *See* ECF 1 at 2-6.[4]  First, Knight alleges that on June 1, 2019, while he was in his cell at BCDC, he experienced shortness of breath and noticed that his lips were swollen.  *Id.* at 2.  He was immediately taken to the infirmary, where Janyne M. Levy, CRNP. administered an epinephrine shot.  *Id.* at 3.  Subsequently, Levy informed Knight that the incident was the result of an allergic reaction to his blood pressure medication, Lisinopril, which he had been taking for five months.  *Id.*  Levy also told Knight that the reaction was "a common occurrence with African Americans."  *Id.*  Levy then promptly replaced the medication.  *Id.*

Knight claims that the Medical Defendants were careless and negligent in failing to disclose to him or warn him of any side effects prior to prescribing the medication.  *Id.* Specifically, he asserts that medical staff should have provided a written disclosure to be acknowledged and signed by the inmate.  *Id.*  Knight avers that, had he been told of the possible

---

[3] Knight also filed correspondence regarding an assault that took place at BCDC on October 18, 2021.  ECF 31.  To the extent Knight alleges that the circumstances surrounding this incident amounted to a § 1983 violation, he may raise his claim in a separate suit.

[4] All citations reflect their electronic pagination.

adverse reaction, "this situation would have never occurred" and he would not have been placed in a "potentially life-threatening situation that caused mental anguish." *Id.*

The second incident took place on April 14, 2020, when Knight discovered that the County Defendants "were violating the CDC regulation or rule for quarantine of all new intakes for 14 days or more." *Id.* at 4. According to Knight, new intakes were being placed in general population in less than 14 days, at a time when inmates were not provided with personal protective equipment ("PPE"), and the wearing of a mask was deemed a Class 3 Offense punishable by loss of privileges or restrictive housing. *Id.* In particular, Knight refers to inmate Alexander Gryglik, who entered BCDC on April 3, 2020, and was transferred to general population on April 14, 2020. *Id.* Knight claims that although he brought his concerns to the attention of BCDC staff by submitting a grievance form, nothing changed. *Id.* at 4-5. Plaintiff asserts that the County Defendants willfully placed his life in danger and were deliberately indifferent to his health and well-being. *Id.* at 6.

Knight also claims that both the County Defendants and the Medical Defendants violated HIPAA and his "rights to confidentiality" by disclosing his medical information in the presence of correctional officers and other inmates. *Id.* at 5. Specifically, Knight avers that medical staff performed temperature checks in his cell or in the dayroom. *Id.*

According to the County Defendants, the CDC guidelines regarding COVID-19 were posted in all BCDC housing units on March 13, 2020. ECF 17-23 at 2. On March 19, 2020, a video about COVID-19 was played during each shift for BCDC inmates. *Id.* On March 25, 2020, BCDC building operations staff began spraying building ventilation systems on a weekly basis and changing air filters more frequently. ECF 17-10 at 1. The first order for masks was placed on March 27, 2020. ECF 17-23 at 2.

On April 4, 2020, all staff, contractual employees, and professional visitors entering the BCDC facility were required to have their temperature checked, and only those with temperatures below 100.4 were allowed entry.  ECF 17-23 at 2.  On April 8, 2020, spray bottles of disinfectant were placed in the housing units and inmate custodial closets.  *Id.*; *see also* ECF 17-7.  That same day, Director Watts sent an email directing all BCDC staff to discontinue the practice of wearing the same pair of gloves from one housing unit to another or from one task to the next.  ECF 17-8; 17-23.

The first shipment of masks arrived at BCDC on April 9, 2020.  ECF 17-23.  Masks were issued to all staff, and anyone entering the facility was required to wear a mask.  *Id.*  In addition, inmate workers were required to pass a temperature check and were directed to wear masks while working.  *Id.*

On April 10, 2020, the Baltimore County Health Department notified Director Watts that an inmate from Housing Unit 3P tested positive for COVID-19.  ECF 17-9; Watts Aff., ECF 17-2, ¶ 22.  According to Watts, this was the first confirmed case at BCDC.  ECF 17-2, ¶ 23.  Watts immediately sent an email to all BCDC correctional staff to relay the information.  *Id.,* ¶ 24.  Included in Watts's email were her answers to questions and concerns from staff as well as instituted operational changes.  ECF 17-9.  On April 12, 2020, BCDC medical staff, accompanied by correctional officers, began rolling temperature checks for all BCDC inmates.  ECF 17-23.

Administrative Captain Daniel Swain issued an email on April 13, 2020,  detailing COVID-19 management steps for new inmates to be implemented at midnight.  ECF 17-5. All new inmates were to be issued face masks upon admission and face masks were required to be worn at all times until the new inmate was removed from diagnostic status.  *Id.*, ¶ 1.  Capt. Swain ordered new inmates to be housed in Housing Unit 4Q, which was placed on lockdown, with only one dorm

permitted in the dayroom for exercise on a rotating basis. *Id.* Cleaning supplies were made available between dorm exercise periods, and inmates who exercised were directed to clean contact areas. *Id.* Once Housing Unit 4Q reached capacity, new inmates were to be housed in Housing Unit 3T, under the same restrictions and requirements. *Id.* All activities, including classification intake interviews, phone calls with counsel, and bail reviews were to take place in the housing unit utilizing the provided equipment. *Id.*

Capt. Swain prohibited inmate movement outside of any housing unit except for bail review or if medically necessary. *Id.*, ¶ 2. Inmate worker movement was suspended; the staff dining room was closed; correctional staff were ordered to bring their own meals; food service staff, assisted by correctional staff, were to prepare all inmate meals; building operations staff were to perform laundry and loading dock duties; and floor officers were to place cleaning supplies in the housing units on each shift and remove trash. *Id.*, ¶ 3.

The County Defendants do not dispute that Gryglik was admitted to BCDC on April 3, 2020, and was transferred to general population on April 14, 2020. *See* ECF 17-22. Upon learning that Gryglik was transferred on April 14, 2020, Knight filed a grievance regarding his concerns about the spread of COVID-19 within BCDC. ECF 17-20. Correctional staff investigated Knight's concerns, and on May 27, 2020, management analyst Stephen Verch responded to each of his inquiries. ECF 17-21. In pertinent part, Verch noted that the BCDC Administration was "working extremely hard to keep every inmate safe and prevent the COVID-19 virus from spreading throughout th[e] facility." *Id.* at 2. After discussing in detail BCDC's efforts regarding ventilation, cleaning supplies, disposable gloves, inmate movement, and sick call protocol, Verch informed Knight that no further action would be taken regarding his grievance. *Id.*

On April 21, 2020, masks were issued to inmates housed in quarantined housing units. ECF 17-23 at 2. Correctional staff were provided with cloth masks on May 29, 2020. *Id.* And, on September 3, 2020, surgical face masks were issued to all BCDC inmates. Then, face shields were made available to correctional staff on September 8, 2020. *Id.* On September 15, 2020, cloth masks were provided to all inmates. *Id.*

Knight filed a second grievance on September 8, 2020, alleging that his medical information was disclosed to other inmates and correctional officers, in violation of HIPAA, when his temperature was taken in the housing unit dayroom or cell and a correctional officer recorded it. ECF 17-16. On September 18, 2020, Verch assigned Defendant Rawlerson to investigate the allegation. ECF 17-17. After consulting with the Baltimore County Office of Law, communicating with the Baltimore County HIPAA Privacy Officer, and conducting independent research on the matter, Rawlerson concluded that there was no HIPAA violation on the part of BCDC medical staff and correctional officers. ECF 17-18, ECF 17-19.

On December 9, 2020, due to the rise in positive COVID-19 cases in the community and based on guidance from the Baltimore County Health Department, Lieutenant Nathan Zahn ordered the addition of restrictive procedures regarding BCDC staff meal breaks. ECF 17-13. The restrictions, which were implemented on December 22, 2020, included limiting the number of staff working on each unit; limiting the assignments of staff who were not N-95 mask qualified; and directing shift supervisors to notify BCDC Administration each time a staff member entered a sick request related to COVID-19. *Id.*; ECF 17-14. On January 15, 2021, COVID-19 vaccinations were offered to BCDC staff and inmates. ECF 17-15.

## II.      Standards of Review

### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable*

8

*Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view

such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665.

## B.

The motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

11

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom*; *Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).   A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"   *Harrods,* 302 F.3d at 244 (citations omitted).   But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.   And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Knight has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the pending motions as ones for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir.

2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh,* 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of

the factfinder to resolve factual disputes, including matters of witness credibility.  That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'"  *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted).  In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."  *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because Knight is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.    Discussion

In their motion, the County Defendants contend that: (1) Knight fails to state constitutional violations cognizable under § 1983; (2) Knight was not subjected to unconstitutional conditions of confinement at BCDC; (3) Knight was not subjected to deliberate indifference to a serious medical need; (4) the County Defendants did not violate HIPAA; and (5) the County Defendants are entitled to qualified immunity.  ECF 17-1.  Similarly, the Medical Defendants argue that: (1) Knight fails to demonstrate deliberate indifference to a serious medical need; (2) PrimeCare Medical, Inc. ("PrimeCare") cannot be held liable under the doctrine of respondeat superior; (3) HIPAA does not provide a private cause of action; (4) the Fourth Circuit has declined to declare a constitutional right to privacy in one's personal medical information; and (5) Knight's common law claims fail because he has not complied with the Maryland Health Care Malpractice Claims Act, Md. Code (2020 Repl. Vol), § 3-2A-01 *et seq.* of the Courts and Judicial Proceedings Article. ECF 23-1.

### A.    County Defendants

#### 1. *Section 1983*

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

At the time of the incident giving rise to this case, Knight was a pretrial detainee at BCDC. ECF 17-1 at 12.  Therefore, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment.  *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical

17

needs of a pretrial detainee violates the due process clause."); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992) ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.") (citations omitted); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citation omitted).

Of import here, a pretrial detainee is provided with the same rights as a convicted prisoner, for whom the Eighth Amendment would apply. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018). Indeed, "[d]ue process rights of a pretrial detainee are at least as great as the eighth amendment protections available to a convicted prisoner." *Hill*, 979 F.2d at 991. Thus, the Fourth Circuit has determined that the Eighth Amendment's deliberate indifference standard, applicable to convicted prisoners, also applies to claims of inadequate medical treatment made by pretrial detainees under the Fourteenth Amendment.[5]

---

[5]  In *Hill*, the Fourth Circuit adopted the deliberate indifference standard for a pretrial detainee but recognized that the constitutional protections for pretrial detainees could arguably be "greater" than those afforded to convicted prisoners. *Hill*, 979 F.2d at 991. Since *Hill*, the Supreme Court has called into question the equivalence between the standards applied to claims by pretrial detainees and those applied to claims by convicted inmates. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court said that, unlike the standard applied to post-conviction excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment does not include a subjective component. *Id.* at 296-97.

Several circuits have extended this reasoning to hold that the standard for claims of pretrial detainees alleging inadequate medical care under the Fourteenth Amendment should not include a subjective component. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v.*

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King*, 825 F.3d at 218. Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338 (4th Cir. 2021) (same). But, the Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20).

---

*Cty. of Orange*, 888 F.3d 1118,1124-25 (9th Cir. 2018). But, courts in this circuit, including courts in this district, have declined to extend the holding of *Kingsley* to claims of deliberate indifference to a serious medical need, noting that "neither this Court nor the Fourth Circuit has applied *Kingsley* to a pretrial detainee's claim of failure to protect or deliberate indifference to a serious medical need, where there are no allegations of force applied by the defendants." *See Perry v. Barnes*, No. PWG-16-705, 2019 WL 1040545, at *3 n.3 (D. Md. Mar. 5, 2019); *accord Mays v. Sprinkle*, No. 7:18CV00102, 2019 WL 3848948, at *1 (W.D. Va. Aug. 15, 2019); *Wallace v. Moyer*, CCB-17-3718; 2020 WL 1506343 at 6*n. 9.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Thompson*, 878 F.3d at 97. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Construed liberally, Knight's contentions regarding the management of the COVID-19 health crisis at BCDC raise either conditions claims or an allegation that the County Defendants failed to protect him. Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In order to establish cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). Similarly, to establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer,* 511 U.S. at 834).

20

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 302-03 (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson*, 878 F.3d at 107. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

In assessing Knight's claims, it is important to understand the context. The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).[6] The nation was thrust into "the grip of a public health

---

[6] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020).  The events of which Knight complains date to April 2020, about a month after the pandemic was declared.

The COVID-19 health crisis is unprecedented in modern times.  It has been described as the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic has "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *vacated on other grounds*, 815 Fed. App'x 978 (6th Cir. 2020).

To be sure, government, businesses, schools, and institutions, including prisons, attempted to navigate unchartered waters, in an effort to stem the spread of the virus.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  There was no road map, however.  As we approach the second anniversary of the pandemic, with a new variant dominating the news, much has been learned, yet much remains unknown.

In the context of the COVID-19 pandemic, courts have found that a plaintiff "must provide more than generalized allegations that the [defendants] ha[ve] not done enough to control the spread" of COVID-19.  *Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021); *see also Hope v. Warden*, 972 F.3d 310, 330 (3rd Cir. 2020) (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the

---

Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

government must entirely eliminate their risk of exposure in order to comply with constitutional mandates).   Other courts that considered allegations similar to those presented in Knight's Complaint have concluded that they do not support a claim of deliberate indifference.  *See, e.g.*, *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4–6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Kesling v. Tewalt*, 476 F.Supp.3d 1077, 1086–88 (D. Idaho 2020) (noting that "[a]t first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus" and "it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited"); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (finding that an inmate's "speculation about the mere possibility that he will become infected by the virus does not rise to the level of an Eighth Amendment violation").

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), although the Sixth Circuit characterized the risk posed by the COVID-19 virus as "a substantial risk of serious harm," *id.* at 840, it reversed the lower court's grant of preliminary injunctive relief because the prison at issue had implemented safeguards such as screening inmates, staff, and visitors for symptoms; isolating and quarantining inmates exposed to the virus; implementing limitations on movements into and within the facility; testing of inmates and staff; mandating extensive cleaning efforts; providing access to cleaning supplies; educating inmates and staff about the virus; and providing PPE to both staff and inmates, which constituted evidence that prison officials were not deliberately indifferent to the risk posed by COVID-19.  *Id.* at 841.  The court concluded that "while the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted,' the [Bureau of Prisons] has 'responded

reasonably to the risk' and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights." *Id.*; *see Dove v. Gang*, No. CV DKC-20-1145, 2020 WL 4262269, at *3 (D. Md. July 24, 2020) (discussing *Wilson*, 961 F.3d at 839, 841).

Likewise, numerous safeguards were implemented at BCDC, including the education of inmates and staff regarding COVID-19; frequent cleaning of ventilation systems and changing of air filters; temperature checks; distribution of cleaning products; mandating disposal of used gloves; distribution of masks; isolation of new inmates; limiting the number of staff at the facility; and, eventually, offering COVID-19 vaccines.[7]   Even though masks were not immediately available to inmates, as Knight claims, "it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited." *Kesling*, 476 F.Supp.3d at 1087–88.  In any event, masks were ordered on March 27, 2020, and immediately distributed upon receipt on April 9, 2020.

With regard to Knight's claim that new inmates were being released to general population prematurely, he points to the early transfer of inmate Gryglik on April 14, 2020.  Although Gryglik was isolated for only 11 days, or three days less than the CDC recommendation, it appears that BCDC's quarantine protocol did not take effect until the early morning hours on April 14, 2020, and was applicable only to inmates admitted after that time.  Notwithstanding, BCDC began rolling temperature checks two days prior to Gryglik's transfer, and thus had a safeguard in place before he was housed in general population.

In sum, the constantly evolving protective measures at BCDC were extensive, and the facility clearly endeavored to comply with measures believed to decrease the dangers of viral spread through the facility.  Even assuming, *arguendo*, that more could have been done, this is not

---

[7] Of course, vaccines were not available at the outset of the pandemic.

the test or the measure.  "Neither the resultant harm of increasing infections nor the impossibility of achieving six-foot social distancing in a jail environment establishes that the defendants acted with 'subjective recklessness as used in the criminal law.'"  *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 839–40).

In light of the safeguards put in place, which represent a reasonable response to the COVID-19 threat, Knight cannot prevail on his claim of a due process violation or cruel and unusual punishment.

### 2.  HIPAA

Knight claims that both the County Defendants and the Medical Defendants violated HIPAA when they administered temperature checks in the presence of correctional officers and other inmates.

HIPAA establishes standards and regulations to protect the privacy and accuracy of medical records, and it prohibits the wrongful disclosure of unique health identifiers or individually identifiable health information.  42 U.S.C. § 1320d-6 (2018).  The statute does not, however, provide a private right of action for any citizen.  *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837 (9th Cir. 2016); *Dodd v. Jones*, 623 F.3d 563 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53 (1st Cir. 2009); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006); *Tarpley v. Pierce*, No. GLR-17-3267, 2018 WL 4616058, at *10 (D. Md. Sept. 26, 2018); *see also Regan v. U.S. Dep't of Veterans Affairs*, 518 Fed. App'x 160, 161-62 (4th Cir. 2013) (finding that the plaintiff's appeal of the district court's dismissal of a HIPAA claim based on the lack of a private right of action under that statute was waived because she did not object to the magistrate

judge's recommendation of dismissal on that basis).   Therefore, Knight's HIPAA claims necessarily fail as a matter of law.

## B.   Medical Defendants

### 1.   Deliberate Indifference

Knight faults the Medical Defendants for failing to disclose or warn him of any possible side effects prior to prescribing his blood pressure medication.   Construed liberally, he alleges deliberate indifference to a serious medical need.

As previously stated, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII.   "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."   *De'Lonta*, 330 F.3d at 633 (citing *Wilson*, 501 U.S. at 297).   The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley*, 475 U.S. at 319-20; *see Farmer*, 511 U.S. at 832; *Raynor*, 817 F.3d at 127.   "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'"   *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

Of relevance here, in order to state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.   *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008).   The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. As the Court explained in *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017), "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate

indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (Citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.").

Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106).  Further, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'"  *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury."  *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).  A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842).  In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk."  *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard.  *See Wright v.*

29

*Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct. 1970).  Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs."  *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Knight claims that the Medical Defendants were deliberately indifferent to his serious medical needs when they prescribed Lisinopril, notwithstanding the possibility that he would have an allergic reaction.  In support of his claim, Knight states only that a nurse in the medical staff told him that an allergic reaction was a common occurrence with African Americans such as himself.

Even assuming that plaintiff's allegations satisfy the objective prong, he fails to provide any facts to satisfy the subjective component.  In particular, Knight does not allege that the Medical Defendants knew he was highly susceptible to an allergic reaction from taking Lisinopril.  As previously noted, "it is not enough that an official *should* have known of a risk; he or she must have had *actual subjective knowledge* of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."  *Lightsey*, 775 F.3d at 178 (first emphasis in original, second emphasis supplied).  Moreover, as the Medical Defendants note, Knight concedes that he had been on Lisinopril for five months, without incident.  And, once the medical staff became aware of the allergic reaction, the medication was immediately replaced.  *See* ECF 23-1 at 5.

On this record, the Medical Defendants' actions do not amount to deliberate indifference to a serious medical need.[8]

### 2. *Respondeat Superior*

To the extent Knight intends to sue PrimeCare in its capacity as the Medical Defendants' employer, he cannot succeed.  Knight does not attribute any specific action or inaction to PrimeCare that resulted in a constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983).  Rather, liability of supervisory officials is "premised

---

[8] To the extent that Knight's Complaint raises state law claims of medical malpractice and negligence, the court declines to exercise supplemental jurisdiction and thus will dismiss such claims, without prejudice.  *See* 28 U.S.C. § 1367(c)(3).

on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Knight has failed to plead facts that, if true, would show supervisory indifference to, or tacit authorization of, any misconduct by PrimeCare's employees. As discussed above, Knight failed to show that his constitutional rights were violated. Accordingly, he has necessarily failed to demonstrate that PrimeCare authorized or was indifferent to any such violation. Nor do Knight's assertions demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").

### 3. *Confidential Medical Information*

Knight alleges that the Medical Defendants violated HIPAA and his "rights to confidentiality" by disclosing his medical information in the presence of correctional officers and other inmates.

As mentioned above, HIPAA does not provide a private right of action for any citizen. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). Moreover, the Fourth Circuit has concluded that prisoners have "a reduced expectation of privacy in prison and . . . no reasonable expectation of privacy in his [medical] diagnosis and treatment." *Payne v. Taslimi*, 998 F.3d 648, 659 (4th Cir. 2021), *cert. denied*, No. 21-617, 2021 WL 5869448 (U.S. Dec. 13, 2021). Therefore, there is no merit to Knight's claim regarding the BCDC medical staff's discussion of his medical information while in his cell and in the dayroom.

## IV.    Conclusion

There are no genuine disputes of material fact and defendants are entitled to summary judgment as a matter of law.[9] Thus, the motions of the County Defendants and the Medical Defendants, construed as motions for summary judgment, shall be granted.

A separate Order follows.


January 6, 2022                                     /s/
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[9] In light of the court's ruling, an analysis of defendants' remaining arguments is not necessary.